22 A.3d 68

SANFORD CANTER, PLAINTIFF–RESPONDENT, v. LAKEWOOD OF VOORHEES, D/B/A LAKEWOOD OF VOORHEES ASSOCIATES, LP, SENIORS MANAGEMENT–NORTH, INC. AND OZAL OF LAKEWOOD, INC., DEFENDANTS–RESPONDENTS, AND SENIORS HEALTHCARE, INC., DEFENDANT–APPELLANT, AND ABE STEINMAN, PHILIP STEINMAN, STEVEN LAZOVITZ, ESTATE OF JOE ABRAMSON, STUART LICHT, FRANK BURSTEIN, BARRY ABRAMSON, ALEX MAKRIS, MEDICAL DIRECTOR, JUDY ZUGGY, DIRECTOR OF NURSING, VIRGINIA EUSEBIO, EMPLOYEE, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued May 4, 2011—Decided June 28, 2011.

510

Before Judges CUFF, SAPP–PETERSON and SIMONELLI.

*Hersh Kozlov* argued the cause for appellant (*Duane Morris, L.L.P.*, attorneys; *Mr. Kozlov*, of counsel; *Mr. Kozlov, Catherine L. Sakach* and *Timothy E. Stauss*, on the brief).

*Saul G. Gruber* argued the cause for respondent Sanford Canter (*The Gruber Firm, L.L.C.*, attorneys; *Mr. Gruber*, of counsel; *Mr. Gruber* and *Victoria Schall*, on the brief).

*Zachary R. Davis* argued the cause for respondent Seniors Management–North, Inc. (*Stevens & Lee P.C.*, attorneys; *Mr. Davis*, of counsel and on the brief).

*Fox Rothschild, L.L.P.*, attorneys for amicus curiae Health Care Association of New Jersey (*Jonathan D. Weiner,* of counsel; *Mr. Weiner, R. James Kravitz* and *James D. Young,* on the brief).

The opinion of the court was delivered by

SIMONELLI, J.A.D.

This is a nursing home negligence action arising from injuries sustained by plaintiff Sanford Canter at the Lakewood of Voorhees Nursing Home, a New Jersey licensed long-term care facility (the nursing home). By leave granted, defendant Seniors Healthcare, Inc. (SHI) appeals from the denial of its motions for partial summary judgment and reconsideration on the issue of whether corporate veil-piercing principles apply to a New Jersey limited partnership, or alternatively, whether there is a genuine issue of material fact as to whether plaintiff established the veil-piercing factors.

We hold that equitable principles, such as veil piercing, may apply to a New Jersey limited partnership but in limited circumstances, such as where a limited partner takes or attempts action not within the safe harbor of *N.J.S.A.* 42:2A–27b, or dominates and uses the limited partnership to perpetrate a fraud, injustice, or otherwise circumvent the law. Because the record does not establish such circumstances, we reverse.

We begin by explaining the relationship between the various entities and individuals involved in this matter. Defendant Lakewood of Voorhees Associates LP (Lakewood) is a limited partnership formed in 1978 pursuant to the New Jersey Uniform Limited Partnership Law (1976) (NJULPL), *N.J.S.A.* 42:2A–1 to –73. At its inception, Lakewood was capitalized with at least $600,000. Lakewood owns and operates the nursing home.

SHI is a Pennsylvania corporation incorporated in 1996. It is a limited partner of Lakewood and holds an 84.12% interest in the partnership. It also is the sole shareholder of defendant Ozal of

Lakewood, Inc. (Ozal) and defendant Seniors Management–North, Inc. (SMN).

Ozal is a New Jersey corporation incorporated in 1999. Ozal is Lakewood's general partner and holds a 1% interest in the partnership.

SMN is a New Jersey corporation incorporated in 2000. SMN provides accounting, billing, group purchasing, support and professional-consulting services to the nursing home pursuant to a management agreement. Its employee, Cherly Carnes, is the nursing home's administrator who controls the nursing home's day-to-day operations. SMN has no ownership interest in Lakewood, but receives a management fee pursuant to the management agreement. SMN also manages nine other nursing homes in New Jersey, Pennsylvania and the District of Columbia.

Defendant Steven Lazovitz is Ozal's sole director. He is also a director, officer and majority shareholder of SHI. He is a former general and limited partner of Lakewood and former officer of SMN. Lazovitz executed the original management agreement on behalf of Lakewood when he was the general partner.

Lenard Brown and Robert Sall are directors and employees of SHI and former officers of SMN. SMN paid the salaries of Brown, Sall and Lazovitz until they were placed on SHI's payroll. SHI pays their salaries from the corporate overhead fees it receives from SMN.

Plaintiff's expert opined, in part, that Lakewood, SHI and SMN "operate as one seamless long[-]term care organization," and SHI and SMN "exercised significant control" over Lakewood's operation. Realizing that plaintiff may use this opinion to impose liability on SHI for Lakewood's negligence, SHI filed a motion for partial summary judgment contending, in part, that corporate veil-piercing principles do not apply to a limited partnership, such as Lakewood, and the NJULPL alone governs a limited partner's

liability to third parties.[1] Alternatively, SHI contended that even if corporate veil-piercing principles could apply to a limited partnership, there was no genuine issue of material fact that SHI did not dominate Lakewood or use Lakewood to perpetrate a fraud, injustice, or otherwise circumvent the law.

Focusing on the interrelationship between the various entities and individuals, the motion judge applied corporate veil-piercing principles to a limited partnership. The judge concluded there was a genuine issue of material fact as to whether SHI controlled Lakewood, sufficient to hold SHI, Lakewood's limited partner, liable to third parties for Lakewood's negligence. The judge made the following findings to support this conclusion: (1) SHI is SMN's and Ozal's sole shareholder; (2) SHI owns approximately 84% of Lakewood, whereas Ozal only owns 1%; (3) the entities did not observe corporate formalities; (4) there is "extensive commonality of ownership and of officer involvement" among the entities; and (5) Lakewood did not carry liability insurance, regardless of whether it was required to have such insurance. The judge also concluded,

> Because of various factors ... the nature and extent of the control here exhibited ultimately by [SMN] and the interconnection between these various entities and the persons involved with respect to them, I am left to conclude that, in terms of [SHI's] role as a limited partner, there is a genuine issue of material fact as to its overall role in this enterprise and specifically whether it, [SHI], is effectively the general partner ... of Lakewood ... or the equivalent thereof.
>
> Again, I acknowledge the respect that is to be afforded to corporate [form] or the equivalent thereof in the context of a limited partnership as set forth in *Verni [v. Harry M. Stevens, Inc.,* 387 *N.J.Super.* 160, 903 *A.2d* 475 (App.Div.2006), *certif. denied,* 189 *N.J.* 429, 915 *A.2d* 1052 (2007)] and [N.J. Dep't of Envtl. Prot. v.] Ventron [Corp.,* 94 *N.J.* 473, 468 *A.2d* 150 (1983)] ... and yet, when there is direct involvement in the conduct, I am satisfied that [SHI] is not entitled to ... summary judgment ... because I am not convinced, as a matter of law, that that's the case. [SHI] may be effectively a general partner, given the nature of this arrangement and, ... otherwise, because of the interrelationship with all the other entities—and I say this with respect to all these entities—summary judgment in its favor is not appropriate.

---

[1] Although all defendants moved for partial summary judgment, only SHI sought leave to appeal. Thus, we limit this opinion to SHI.

Notably, the judge did not find that SHI was substantially involved in Lakewood's day-to-day operations; rather, he found that SMN and its employees are involved in Lakewood's day-to-day operations. Also, the judge made no finding whether SHI used Lakewood to perpetrate a fraud, injustice, or otherwise circumvent the law.

The judge subsequently denied SHI's motion for reconsideration. SHI then filed a motion for leave to appeal from the denial of both motions, which we granted. On appeal, SHI contends the judge erred in applying corporate veil-piercing principles to Lakewood, a limited partnership. It argues that only the NJULPL applies in this case and its "safe harbor" provision, *N.J.S.A.* 42:2A–27b, shields SHI from any liability for Lakewood's negligence. Alternatively, SHI contends that even if corporate veil-piercing principles could apply to a limited partnership, the judge: (1) erroneously found there was a genuine issue of material fact as to the first prong of the corporate veil-piercing test, that is, that SHI dominated Lakewood; and (2) failed to find the second prong, that is, that SHI used Lakewood to perpetrate a fraud, injustice, or circumvent the law.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. *Coyne v. N.J. Dep't of Transp.*, 182 *N.J.* 481, 491, 867 *A.2d* 1159 (2005); *Chance v. McCann*, 405 *N.J.Super.* 547, 563, 966 *A.2d* 29 (App.Div.2009). Thus, we consider, as the trial judge did, " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.*, 189 *N.J.* 436, 445–46, 916 *A.2d* 440 (2007) (quoting *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 536, 666 *A.2d* 146 (1995)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–

2(c). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." *Massachi v. AHL Servs., Inc.*, 396 *N.J.Super.* 486, 494, 935 *A.*2d 769 (App.Div.2007), *certif. denied,* 195 *N.J.* 419, 949 *A.*2d 847 (2008).

As for the denial of the motion for reconsideration, we have determined,

> Reconsideration itself is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice[.] It is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [*Palombi v. Palombi,* 414 *N.J.Super.* 274, 288, 997 *A.*2d 1139 (App.Div.2010) (citations and internal quotation marks omitted).]

Applying these standards, we are satisfied the judge properly concluded that corporate veil-piercing principles can apply to a limited partnership; however, the record does not support veil piercing in this case.

*N.J.S.A.* 42:2A–27a shields a limited partner from liability for the limited partnership's obligations except under two circumstances: (1) where the limited partner is "also a general partner," or (2) where a limited partner "participat[es] in the control of the business[.]" *N.J.S.A.* 42:2A–27a. However, where "the limited partner's participation in the control of the business is not substantially the same as the exercise of the powers of a general partner, he is liable only to persons who transact business with the limited partnership with actual knowledge of, and reliance on, his participation in control." *Ibid.*

*N.J.S.A.* 42:2A–27a is modeled after § 303(a) of the Revised Uniform Limited Partnership Act (1976) (RULPA), which effected changes to the original 1916 Act

> because of a determination that it is not sound public policy to hold a limited partner who is not also a general partner liable for the obligations of the partnership except to persons who have done business with the limited partnership reasonably believing, based on the limited partner's conduct, that he is a general partner.

[Uniform Limited Partnership Act (1976) § 303 Comment, 6B U.L.A. 182 (2008).]

*N.J.S.A.* 42:2A–27a "sharply limits the circumstances under which the exercise of 'control' could lead to imposition of general partner liability on a limited partner." *Zeiger v. Wilf,* 333 *N.J.Super.* 258, 276, 755 *A.*2d 608 (App.Div.), *certif. denied,* 165 *N.J.* 676, 762 *A.*2d 657 (2000).

Consistent with the sharp limitations of *N.J.S.A.* 42:2A–27a, *N.J.S.A.* 42:2A–27b provides a "safe harbor" provision.[2] *See id.* at 275, 755 *A.*2d 608. It establishes certain activities, in which a limited partner may engage, which do not constitute participation in control of the limited partnership's business within the meaning of *N.J.S.A.* 42:2A–27a. Included within those safe harbor activities are: (1) being or serving as a shareholder of a general partner; (2) "[c]onsulting with or advising a general partner with respect to any matter, including the business of the limited partnership;" or (3) being a contractor, an agent or employee of the limited partnership. *N.J.S.A.* 42:2A–27b(1)–(2), (6).

New Jersey has not addressed whether corporate veil-piercing principles can apply to a limited partnership. However, *N.J.S.A.* 42:2A–2 provides that the NJULPL "shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it." Accordingly, we look to other states that have adopted the RULPA to see how they apply corporate veil piercing in the limited partnership context.

Absent authority in this State, we consult Delaware corporate law for guidance. *See Lawson Mardon Wheaton, Inc. v. Smith,* 160 *N.J.* 383, 398, 734 *A.*2d 738 (1999). Delaware has also adopted

---

[2] *N.J.S.A.* 42:2A–27b is modeled after § 303(b) of the RULPA, which "is intended to provide a 'safe harbor' by enumerating certain activities which a limited partner may carry on for the partnership without being deemed to have taken part in control of the business." Uniform Limited Partnership Act (1976) § 303 Comment, *supra,* at 182. Since 1976, the safe harbor list has expanded over the years to reflect case law and recent developments demonstrating when limited partners should not be subjected to general liability. *Ibid.*

the RULPA. *Del.Code Ann.* tit. 6, §§ 17–101 to 17–1111 (2011). *Del.Code Ann.* tit. 6, § 17–303(a) provides that

[a] limited partner is not liable for the obligations of a limited partnership unless he or she is also a general partner or, in addition to the exercise of the rights and powers of a limited partner, he or she participates in the control of the business. However, if the limited partner does participate in the control of the business, he or she is liable only to persons who transact business with the limited partnership reasonably believing, based upon the limited partner's conduct, that the limited partner is a general partner.

Pursuant to this statute, which is similar to *N.J.S.A.* 42:2A–27a, a limited partner is presumed to be a "passive investor" unless the limited partner exceeds that role and exercises control over the limited partnership's business. Applying Delaware law, the United States Bankruptcy Court in *In re Adelphia Communc'ns Corp.*, 376 *B.R.* 87, 93–94 (Bankr.S.D.N.Y.2007) held,

Where a limited partner participates in control by taking or attempting actions that are not within the "safe harbor" under [*Del.Code Ann.* tit. 6] Section 17–303(b),[3] the limited partner may be liable to third parties who transacted business with the limited partnership and reasonably believed, "based upon the limited partner's conduct," that the limited partner is the general partner. The limited partner's participation in control is a threshold issue. Only after it has been determined that the limited [partner] has participated in the control of the business, the conduct of the limited partner will be examined to consider whether such conduct would support a reasonable belief in the third party "that the limited partner is a general partner."

[*Id.* at 94–95 (footnote omitted).]

The court then applied veil-piercing principles to a limited partnership. *Id.* at 108. It observed that although veil piercing has been largely applied only to corporations and not partnerships, "there is nothing about the nature of a limited liability partnership" and "nothing in .[*Del.Code Ann.* tit. 6] Section 17–303 that would preclude recourse to equitable remedies, including veil piercing, against a limited partner in appropriate circumstances." *Ibid.* (citing *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 266 *Va.* 3, 580 *S.E.*2d 806, 811 (2003)); *see also* Uniform Limited Partnership Act (1976) § 303 Note 2, *supra*, at 189 ("Delaware statute govern-

---

[3] The "safe harbor" provision in *Del.Code Ann.* tit. 6, § 17–303(b) is similar to *N.J.S.A.* 42:2A–27b.

ing liability of limited partner for obligations of limited partnership, based on limited partner's participation in control of business, did not preclude recourse to equitable remedies, including veil piercing, against limited partner in appropriate circumstances"). The court emphasized that "[t]o hold otherwise would endorse 'a wrong without a remedy.'" *In re Adelphia, supra,* 376 *B.R.* at 108.

We agree that corporate veil-piercing principles can be applied to a New Jersey limited partnership under appropriate circumstances. However, to pierce the veil there must be evidence that the limited partner participated in the control of the limited partnership's business by taking or attempting action not within the safe harbor of *N.J.S.A.* 42:2A–27b or dominated the limited partnership and used the limited partnership to perpetrate a fraud or injustice, or otherwise circumvent the law. *See Ventron, supra,* 94 *N.J.* at 500–01, 468 *A.*2d 150; *Verni, supra,* 387 *N.J.Super.* at 199–200, 903 *A.*2d 475. Both prongs of the domination test must be established by clear and convincing evidence. *See Trs. of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk,* 332 *F.*3d 188, 194 (3d Cir.2003).

To determine the issue of dominance in the veil-piercing context, "courts consider whether 'the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent.'" *Verni, supra,* 387 *N.J.Super.* at 200, 903 *A.*2d 475 (quoting *Ventron, supra,* 94 *N.J.* at 501, 468 *A.*2d 150). In making this determination, "courts engage in a fact-specific inquiry considering whether the subsidiary was grossly undercapitalized, the day-to-day involvement of the parent's directors, officers and personnel, and whether the subsidiary fails to observe corporate formalities, pays no dividends, is insolvent, lacks corporate records, or is merely a facade." *Ibid.* "As a general principle, . . . the control issue frequently boils down to the limited partner's role in the day-to-day functioning of the business and that partner's decision-making authority versus the role of the general partner." 30 *Am.Jur. Proof of Facts 3d* 259 (1995).

■ Ownership alone is not enough for piercing. *Verni, supra,* 387 *N.J.Super.* at 198, 903 *A.2d* 475; *OTR Assocs. v. IBC Servs.,* 353 *N.J.Super.* 48, 51, 801 *A.2d* 407 (App.Div.), *certif. denied,* 175 *N.J.* 78, 812 *A.2d* 1110 (2002). In addition, "the mere fact that several corporations may be subsidiaries of one parent does not prevent their individual identities from being respected." Pachman, *Title 14A–Corporations,* comment 6c(1) on *N.J.S.A.* 14A:5, at 225 (2011). This court has previously observed that a limited partner of a limited partnership does not assume general partner liability even if the partnership's limited partners were also the sole shareholders, officers and directors of a corporate general partner, and by acting on behalf of the general partner they controlled the activities of the limited partnership. *Zeiger, supra,* 333 *N.J.Super.* at 280–81, 755 *A.2d* 608.

■ It is only when one entity owns an interest in another entity " 'for the purpose of control, so that the subsidiary company may be used as a mere agency or instrumentality for the [holding] company, [that the owner] will be liable for injuries due to the negligence of the subsidiary.' " *OTR, supra,* 353 *N.J.Super.* at 51, 801 *A.2d* 407 (quoting *Ross v. Pa. R.R. Co.,* 106 *N.J.L.* 536, 538–39, 148 *A.* 741 (E. & A.1930)). The hallmarks of domination for an illegitimate purpose "are typically the engagement of the subsidiary [here, the limited partnership] in no independent business of its own but exclusively the performance of a service for the parent [or here, the majority limited partner] and, even more importantly, the undercapitalization of the subsidiary [limited partnership] rendering it judgment-proof." *Id.* at 52, 801 *A.2d* 407.

■ Undercapitalization means

"capitalization very small in relation to the nature of the business of the corporation and the risks ... attendant to such businesses. The adequacy of capital is to be measured as of the time of formation of the corporation. A corporation that was adequately capitalized when formed, but which subsequently suffers financial reverse is not undercapitalized.... Adequate capitalization is a question of fact that turns on the nature of the business of the particular corporation...."

[*Verni, supra,* 387 *N.J.Super.* at 200, 903 *A.*2d 475 (quoting 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.33, at 652 (perm.ed., rev.vol.1999)).]

The undercapitalization factor is key "in determining corporate dominance" because it provides an inference as to whether the business entity " 'was established to defraud its creditors or other improper purpose[s] such as avoiding the risks known to be attendant to a type of business.' " *Id.* at 200–01, 903 *A.*2d 475 (quoting *Trs. of Nat'l Elevator, supra,* 332 *F.*3d at 197).

■ Contrary to the judge's findings, SHI does not participate in the control of Lakewood's business within the meaning of *N.J.S.A.* 42:2A–27a by being or serving as a shareholder of Ozal. *See N.J.S.A.* 42:2A–27b(1), (6). Nor does SHI participate in the control of Lakewood's business because it owns SMN, which controls Lakewood's day-to-day operations. SHI's mere ownership of SMN, without more, does not demonstrate SHI's involvement in Lakewood's day-to-day operations, nor does it demonstrate domination. *See Verni, supra,* 387 *N.J.Super.* at 201, 903 *A.*2d 475. Also, even if SMN's control of Lakewood could somehow be imputed to SHI, being a contractor for Lakewood does not constitute participation in the control of Lakewood's business. *See N.J.S.A.* 42:2A–27b(1).

Further, the commonality of ownership and officer involvement does not establish participation in the control of Lakewood's business. *Verni, supra,* 387 *N.J.Super.* at 201, 903 *A.*2d 475. There is nothing wrong with Lazovitz being or serving as Ozal's officer or director, while at the same time being or serving as SHI's officer, director, or shareholder. *See ibid.* (observing that " '[a] parent's domination or control of its subsidiary cannot be established by overlapping boards of directors' " (quoting *Seltzer v. I.C. Optics, Ltd.,* 339 *F.Supp.*2d 601, 610 (D.N.J.2004))); *Zeiger, supra,* 333 *N.J.Super.* at 280–81, 755 *A.*2d 608 (observing that where a limited partner acts as an officer and director of a corporate general partner of a limited partnership, that limited partner does not assume general partner liability).

There is also nothing wrong with the structuring of the various entities in this case. Where individuals set up "legitimate business structures to further their personal and business plans" and "d[o] not use their partnerships to commit fraud or defeat the ends of justice[,]" the veil-piercing doctrine will not apply. *Shotmeyer v. N.J. Realty Title Ins. Co.*, 195 *N.J.* 72, 87, 948 *A.*2d 600 (2008).

■ Finally, there is no evidence demonstrating that plaintiff believed, let alone knew, that SHI controlled either Lakewood or the nursing home, or that plaintiff had any dealings with SHI that may justify a finding of liability under *N.J.S.A.* 42:2A–27a. By contrast, in *OTR, supra,* this court held that veil piercing was appropriate where (1) the parent company's domination and control of the subsidiary company was patently clear, (2) the plaintiff believed it was dealing with the parent company and not the subsidiary and did not discover the fact of separate corporate entities until much later in the business dealings, and (3) the subsidiary affirmatively and intentionally led the plaintiff to believe it was transacting business with the parent company. 353 *N.J.Super.* at 53–54, 801 *A.*2d 407. In *OTR,* "in every functional and operational sense, the subsidiary had no separate identity [from the parent company]." *Id.* at 56, 801 *A.*2d 407. Here, however, there is no evidence that Lakewood had no separate identity from SHI. Thus, no liability can be imposed on SHI.

■ The question then is whether there is other evidence establishing that SHI dominated Lakewood and used Lakewood to perpetuate a fraud, injustice, or otherwise circumvent the law. *See Ventron, supra,* 94 *N.J.* at 500–01, 468 *A.*2d 150; *Verni, supra,* 387 *N.J.Super.* at 199–200, 903 *A.*2d 475. There is no evidence that SHI dominated Lakewood and used Lakewood to perpetuate a fraud or injustice, or otherwise circumvent the law. To the contrary, it is clear that Lakewood was sufficiently capitalized at its inception and has a separate existence from SHI. Long before SHI and SMN were organized in 1996 and 2000, respectively, Lakewood was organized as a limited partnership in 1978 for

the legitimate business purpose of owning and operating a nursing home. Lakewood is not insolvent and has assets and income; it has a license to operate the nursing home, owns the property on which the nursing home is located, and earns income from the nursing home's clients. Lakewood also has approximately 240 employees, independent certified public accountants that prepared its financial statements, its own bank accounts, and it enters into contracts in its own name. It also has the right to terminate the management agreement with SMN.

There also is no evidence of a commingling of funds. *Cf. Verni, supra,* 387 *N.J.Super.* at 202, 903 *A.*2d 475 (finding no evidence of commingling of funds to support a finding of corporate dominance even where there is centralized bookkeeping and accounting). There is also no evidence that Lakewood failed to observe limited partnership formalities (as opposed to corporate formalities). Neither the limited partnership agreement, nor the NJULPL, require annual meetings. *Compare N.J.S.A.* 42:2A (not requiring annual meetings of a limited partnership), *with N.J.S.A.* 14A:5–2 (requiring annual meetings of the shareholders of a corporation). Also, unlike corporation law, which requires corporations to "keep books and records of account and minutes of the proceedings of its shareholders," *N.J.S.A.* 14A:5–28(1), the NJULPL has no such requirement, *see N.J.S.A.* 42:2A–9. Therefore, it is irrelevant that Lakewood had no annual meetings.

We conclude that the judge erred in denying summary judgment to SHI and mistakenly exercised his discretion in denying SHI's motion for reconsideration. The evidence in this case, even taken in a light most favorable to plaintiff, is insufficient to establish a genuine issue of any material fact such that Lakewood's veil should be pierced to impose liability on SHI for Lakewood's negligence.

Reversed.