NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1991-15T1

TEN WEST CONDOMINIUM OWNERS'
ASSOCIATION, INC.,

 Plaintiff-Appellant,

v.

LRG REALTY, LLC, and CARL
CERBONE,

 Defendants-Respondents.
___________________________________

TEN WEST CONDOMINIUM OWNERS'
ASSOCIATION, INC.,

 Plaintiff,

v.

LRG REALTY, LLC, its members, each
Individually, and the owners of any
Interest in Units CA 301-310 (Tax Lot
1.14), Units CB 101-107 (Tax Lot
2.01-2.07), Units p/o CB 110 (Tax Lot
2.10), Units CB 201-201, 212-217
(Tax Lot 2.11) and Units CB 301-317
(Tax Lot 2.28), 2740 Route 10 West,
Parsippany-Troy Hills, New Jersey, and
CARL CERBONE, Managing Member of LRG
REALTY, LLC,

 Defendants.
___________________________________
LRG REALTY, LLC and TEN WEST
CONDOMINIUM OWNERS' ASSOCIATION, INC.,

 Plaintiffs,

v.

RON REGAN, ALOK AGARWAL, NEIL BASS,
FOSTER & BELL, LLC, SMARTAX, LLC,
TRIAD TECHNOLOGY CORP., LLC, THE
PROGRESSIVE COMPANIES, GEORGE DENMAN,
OXFORD PROPERTIES, LLC, BRENT LYNCH,
COVETED PROPERTIES, LLC,

 Defendants.
____________________________________

CARL CERBONE,

 Plaintiff,

v.

TEN WEST CONDOMINIUM OWNERS'
ASSOCIATION, THE PROGRESSIVE COMPANIES,
RON REGAN, ALOK ARAWAL, NEIL BASS,
FOSTER & BELL, LLC, TRIAD TECHNOLOGY
CORP., LLC, GEORGE DENMAN, OXFORD
PROPERTIES, LLC, BRENT LYNCH,
COVERED PROPERTIES, LLC.,

 Defendants.
____________________________________

 Argued June 1, 2017 – Decided July 17, 2017

 Before Judges Fuentes, Carroll and Farrington.

 On appeal from the Superior Court of New Jersey,
 Law Division, Morris County, Docket No. L-1197-12.

 Thomas C. Martin argued the cause for appellant
 (Price, Meese, Shulman & D'Arminio, P.C.,
 attorneys; Mr. Martin, of counsel and on the
 brief).

 2 A-1991-15T1
 Richard D. Picini argued the cause for respondents
 (Caruso Smith Picini, PC, attorneys; Mr. Picini,
 of counsel and on the brief).

PER CURIAM

 This case arises out of a judgment for counsel fees entered

against defendant Carl A. Cerbone (Cerbone) and LRG Realty, L.L.C.

(LRG), following plaintiff's successful prosecution of an action

to compel LRG to pay maintenance fees. However, an issue remained

as to whether this liability was imposed against both Cerbone and

LRG, or against LRG alone. The court found that any determination

of this issue was subject to a piercing the corporate veil

analysis. The parties filed cross-motions for summary judgment

on this issue, which were denied by Judge Michael E. Hubner. A

bench trial was held on this limited issue before Judge Robert J.

Brennan on December 8, 2015, during which Cerbone moved for

judgment pursuant to Rule 4:40-1. Judge Brennan entered judgment

in favor of Cerbone, dismissing plaintiff's complaint seeking to

hold Cerbone personally liable for the sum of $89,457.91. We

affirm.

 The Association filed a notice of appeal on January 19, 2016,

and an amended notice of appeal on January 21, 2016.

 On appeal, plaintiff seeks to overturn Judge Brennan's order

of judgment dated January 5, 2016, arguing the trial court erred

 3 A-1991-15T1
in applying the incorrect legal standard when adjudicating

Cerbone's motion for judgment. Plaintiff further seeks to overturn

Judge Hubner's July 28, 2015 order denying plaintiff's motion for

summary judgment. Plaintiff argues the trial court erred because

the undisputed material facts proved LRG was a mere instrumentality

or alter-ego of Cerbone, did not maintain corporate formalities,

was undercapitalized, and financed by sham promissory notes.

 Cerbone and LRG argue in response that Judge Hubner was

correct in denying plaintiff's motion for summary judgment which

was essentially based upon the same evidence plaintiff presented

at trial. They further argue that Judge Brennan correctly directed

a verdict because LRG was not a mere instrumentality or alter ego

of Cerbone, there was no evidence of fraud or injustice, the

promissory notes issued by LRG were not sham transactions, and the

failure of LRG to maintain corporate formalities did not constitute

sufficient grounds to pierce its corporate veil.

 Cerbone formed LRG in August, 1995, and he has been the

company's sole member and manager since that date. Through LRG,

Cerbone hoped to develop, lease, and sell commercial condominiums,

thereby creating a "legacy" for his children and grandchildren.

LRG remained inactive until September 16, 2004, when it purchased

approximately eighty percent of Ten West's units from a foreclosure

 4 A-1991-15T1
proceeding1. At this time, LRG assumed the role of Ten West's

sponsor and responsibility for selling the Association's

condominium units. LRG retained exclusive control of the

Association as the majority owner. Cerbone operated LRG out of

his home in Parsippany which was the company's principal place of

business. Cerbone's daughter and personal accountant maintained

LRG's books and records as well as the books and records of

Cerbone's other companies. LRG obtained a tax identification

number, filed annual income tax returns, and paid the requisite

annual limited liability fee to the State of New Jersey, but held

no formal meetings, kept no minutes, and observed minimal business

formalities. Cerbone, in his individual capacity, owned the land

upon which Ten West was located. Pursuant to an arrangement

described in the parties' Ground Lease and Amended By-laws, LRG

paid its share of condominium maintenance fees to Ten West and Ten

West in turn paid monthly rent to Cerbone in his individual

capacity.

 Between 2004 and 2013, LRG renovated and "built out" three

units, obtained certificates of ownership, and sold the units to

their present owners. According to the record, proceeds from the

three sales are the only income LRG produced.

1
 LRG financed this purchase with funds it borrowed from Valley
National Bank.

 5 A-1991-15T1
 In addition to the three sales, LRG built tenant "fit-outs"

in the remaining space it owned in Ten West, hoping to sell or

lease this space for profit. It financed the "fit-outs" with

loans from Cerdel Construction, another entity wholly owned and

operated by Cerbone. Although the record contains evidence of

Cerbone's attempts to market these units, the trial judge found

the failure to attract lessees or purchasers was due to the

"downturn in the commercial real estate market." Cerbone reported

LRG's losses on his personal income tax returns. Cerbone, both

personally and through his other companies, loaned LRG the funds

necessary to pay its condominium maintenance fees, construction

expenses, and other obligations. The loans were documented by

promissory notes, approximately 125 in total, in amounts ranging

from $19.45 to $372,901.75. He testified he neither demanded, nor

received interest or payments on these notes which lacked default

terms.

 Over the years, several disagreements arose between Cerbone

and the other Ten West unit owners. Those disagreements caused

Cerbone to resign from the Association's Board of Trustees in

2009. In 2012, LRG stopped paying its maintenance fees. Cerbone,

however, demanded that the Association continue to pay him rent.

When the Association refused, LRG commenced suit in a complaint

 6 A-1991-15T1
filed May 11, 2012,2 alleging violation of the amended bylaws,

misappropriation of funds, retaining and paying counsel without

prior authorization, failing to properly document finances, and

keeping inadequate records of meetings. LRG further alleged breach

of fiduciary duty, fraud, unjust enrichment, self-dealing,

criminal racketeering, negligence, breach of business judgment,

conversion of assets, breach of contract, and breach of covenant

of good faith and fair dealing. The complaint also alleged Ten

West owed "a pro-rated share of the fixed rent, which collectively

amounts to $7,975.83 per month."

 The Association brought a separate action against Cerbone and

LRG for the non-payment of condominium maintenance fees and sought

to pierce the corporate veil, alleging Cerbone "wrongfully and

fraudulently exploit[ed] the corporate form for his own personal

gain to the substantial detriment of the Association and [its]

owners[.]"

 In its answer to LRG's Second Amended Complaint, the

Association alleged LRG and/or Cerbone were "in breach of the

agreement sued upon and therefore [had] no right or remedies."

LRG, in its answer, denied Cerbone used the corporation to

perpetuate a fraud, evade the law, or defeat the ends of justice.

2
 LRG amended its Complaint and Jury Demand on June 4, 2012 and
August 29, 2012.

 7 A-1991-15T1
 Both sides accused the other of filing frivolous and meritless

claims. The parties' actions were consolidated and the Law

Division entered a judgment against LRG for $224,997.18 in

delinquent maintenance fees. LRG satisfied that judgment on May

6, 2013.

 Pursuant to N.J.S.A. 46:8B-21, Sections 5.04 and 10.2 of the

master deed, and provisions of the bylaws, Ten West filed a motion

to compel Cerbone and/or LRG to reimburse the Association for its

counsel fees and litigation costs. Judge Thomas V. Manahan granted

the Association's motion for summary judgment on March 20, 2014.

 Cerbone moved to dismiss himself from the case alleging LRG

was a separate entity. Judge Manahan ruled the motion was

premature because discovery was not complete. He specifically did

not consider whether the Association was entitled to pierce LRG's

corporate veil and recover from Cerbone individually. Judge Jared

D. Honigfeld denied LRG's motion for reconsideration on June 11,

2014. On July 18, 2014, he entered an order setting counsel fees

in the amount of $89,457.91, specifying Cerbone and LRG were

"jointly and severally liable[.]" On October 2, 2014, Judge

Honigfeld entered an order clarifying his previous order. He

stated,

 This [c]ourt, upon a re-reading of the
 Statement of Reasons portion of Judge
 Manahan's [o]rder[,] . . . is satisfied that

 8 A-1991-15T1
 said [o]rder did not render defendant Carl
 Cerbone liable for counsel fees. Such
 liability, if any, would have to be predicated
 upon a piercing of the corporate veil between
 Cerbone and LRG Realty, a matter which Judge
 Manahan expressly did not adjudicate, and
 indicated would require the completion of
 discovery.

 Between the dates of Judge Manahan's two orders, Cerbone

convened a meeting of the Association's Board of Directors. The

Association alleges, and Cerbone in his trial testimony did not

materially dispute, Cerbone taunted the Board by brandishing a

check for counsel fees before returning it to his pocket. He then

informed the Board LRG was filing for bankruptcy, which it did on

July 25, 2014. The Association filed a proof of claim in LRG's

bankruptcy proceedings for $89,457.91, representing the amount of

the judgment for counsel fees entered by Judge Honigfeld. The

list of creditors in LRG's bankruptcy also included Cerbone, Cerdel

Construction, Cerbone Enterprises and Valley National Bank. On

September 23, 2014, LRG's ownership interest in Ten West was sold

for $500,000. The sale proceeds were insufficient to satisfy all

of the claims presented by LRG's creditors.

 The parties filed cross-motions for summary judgment which

were denied by Judge Hubner who found substantial issues of

material fact. The matter proceeded to a bench trial before Judge

Brennan on December 7 and 8, 2015. The Association called Cerbone

 9 A-1991-15T1
as a witness in its direct case, as well as Ten West President,

Ronald Regan, before resting. Cerbone moved for judgment pursuant

to Rule 4:40-1. Judge Brennan granted the motion finding:

 Now, ordinarily the Court is not to weigh
 witness credibility in determining a motion
 for judgment, and the motion should ordinarily
 be denied or a question of credibility as to
 a material fact has been raised, we have the
 slightly unusual circumstance here that, as I
 say, the defendant was called on -- Mr.
 Cerbone was called as a witness on the
 plaintiff's case, and we are involved in a
 non-jury or bench trial. And so the court has
 had the opportunity to consider the testimony
 of the two witnesses called by plaintiff, and
 that would be Mr. Ronald Regan, who is the
 president of the plaintiff association
 incorporated, as well as Mr. Cerbone, the
 individual defendant here.
 And so to the extent that there may be
 certain credibility issues, I think it would
 be appropriate for me to go ahead and resolve
 them on this motion, since the plaintiff has
 offered all the evidence it intends to offer,
 and the defense has offered more limited
 testimony in the form of cross-examination of
 Mr. Cerbone by his attorney.

 Judge Brennan went on to find (referring to promissory notes):

 But I think the point is made that there is--
 and of course, the [c]ourt is to view the
 evidence in the light most favorable to the
 plaintiff. But after all, this is not a jury
 trial, and I've heard from both sides, and I'd
 only be hearing -- taking more evidence from
 the defendant.
 And so it's clear to me that the notes
 are not supportive of the notion that the
 corporate veil pierced; that Mr. Cerbone did,
 in fact, keep his finances separate and apart

 10 A-1991-15T1
 from that of LRG. And that's reflected in the
 documents . . . .
 But as a general proposition I find that the
 notes reflect obligations of LRG to Carl
 Cerbone, and that's why they were done. And
 there was nobody else to sign o[n] behalf of
 LRG because Mr. Cerbone was the sole member
 and the sole owner.

The court noted that Cerbone testified:

 [w]ithout contradiction that LRG was -- it had
 expenses.

 . . . .

 So on the under-capitalization point, we
 have the ownership of property in this
 condominium association, as well as a source
 of funds that were advanced to LRG in the hopes
 of a turnaround in the real estate market . .
 . .
 There was testimony that eventually its
 space was sold for approximately $500,000,
 which is much less than the company's
 obligations.

Judge Brennan found:

 [t]here's no proof that Mr. Cerbone violated
 any tax laws or accounting principles in
 treating these losses this way. This was his
 company, and he took the losses on his tax
 returns. It's -- I think it makes the point
 that there is a separation here, and that he
 did as a taxpayer is entitled to do, which is
 balance what limited income he had with the
 losses from his investment in LRG.

 . . . .

 So I have considered all of these tax returns,
 but I don't find them supportive of the
 argument that the plaintiff makes.

 11 A-1991-15T1
 The court also considered plaintiff's contentions that

defendant did not observe corporate formalities, "So the

formalities were not kept in their entirety. I find that the

finances were kept separate. But the fact that one person -- or

that an LLC owned by one person does not have minutes is not

persuasive in a matter involving proof of -- clear and convincing

proof." After further consideration of the certificate of

formation of LRG "which goes back to 1995," the listing agreement

dated June 11, 2010, the marketing brochure assignment and

assumption of the ground lease agreement, the court concluded:

 [LRG] was -- it was not a shell corporation.
 It had an interest in this building, a
 considerable interest, more than half the
 space. And there was considerable funding,
 in excess of a million and a half dollars,
 just from Mr. Cerbone and his companies, not
 to mention Valley National Bank, which is also
 listed as a creditor in the bankruptcy
 proceeding, owed hundreds of thousands of
 dollars . . . .
 And Cerbone himself certainly did not
 derive any benefit from the failure of LRG to
 pay its condominium fees at all. That wasn’t
 something that made his life or his finances
 any better.
 And certainly, the plaintiff has recourse
 against LRG, but it's in the Bankruptcy Court
 . . . .
 Nevertheless, there is nothing illegal
 about going into bankruptcy. And as much as
 Mr. Regan might resent it and be financially
 put upon by that legal action, it doesn’t mean
 that LRG was a sham, was an instrumentality
 of Mr. Cerbone, or that the corporate form was
 ignored abused, or otherwise used fraudulently

 12 A-1991-15T1
 in an illegal way or in a way that would
 deprive Ten West of its rights.

 . . . .

 Even under the standard of Rule 4:40 --
 and this -- there is no proof that makes out
 here entitlement to a piercing of the
 corporate veil, even giving the plaintiff the
 benefit of all favorable inferences and
 looking at the evidence in the light most
 favorable to the plaintiff.

 In determining whether the trial judge properly granted a

motion for judgment pursuant to Rule 4:40-1, this court applies

the same standard of review as the trial court. Frugis v.

Bracigliano, 177 N.J. 250, 269 (2003) (citing Luczak v. Twp of

Evesham, 311 N.J. Super. 103, 108 (App. Div.), certif. denied, 156

N.J. 407 (1998)). The standard is identical to that used to

consider a motion for judgment notwithstanding the verdict, R.

4:40-2 or a motion for involuntary dismissal, R. 4:37-2(b). Rena,

Inc. v. Brien, 310 N.J. Super. 304, 311 (App. Div. 1998). This

court "must accept as true all evidence supporting the position

of the non-moving party" and "accord[] that party the benefit of

all legitimate inferences that can be deducted from such evidence."

Ibid.

 We will affirm the trial court's judgment only if plaintiff

has shown no right to relief, R. 4:37-2(b). See R. 4:40-1, and

"no rational [fact-finder] could conclude from the evidence that

 13 A-1991-15T1
an essential element of . . . plaintiff's case is present." Perez

v. Professionally Green, L.L.C., 215 N.J. 388, 404 (2013) (quoting

Pron v. Carlton Pools, Inc., 373 N.J Super. 103, 111 (App. Div.

2004)). If there is any legitimate view of the evidence that

would sustain a judgment in plaintiff's favor, or if reasonable

minds could differ, this court must reverse. Verdicchio v. Ricca,

179 N.J. 1, 30 (2004) (quoting Estate of Roach v. TRW, Inc. 164

N.J. 598, 612 (2000)); Lyons v. Hartford Ins. Grp., 125 N.J. Super.

239, 243 (App. Div. 1973).

 Plaintiff asserts on appeal that Judge Brennan based his

determinations in part on credibility findings. Ordinarily,

credibility findings have no role in a motion for judgment pursuant

to Rule 4:40. However, where, as here, the trial judge was the

finder of fact, and plaintiff had rested after calling the

president of the Association and Cerbone, the court was entitled

to make findings of credibility and his determinations regarding

same are entitled to substantial deference on appeal. "[B]ecause

a trial court 'hears the case, sees and observes the witnesses,

[and] hears them testify,' it has a better perspective than a

reviewing court in evaluating the veracity of the witnesses" and

the quality of the evidence. Twp. Of W. Windsor v. Nierenberg,

150 N.J. 111, 132-33 (1997) (quoting Pascale v. Pascale, 113 N.J.

20, 33 (1998)).

 14 A-1991-15T1
 As to the issue of whether the court erred in its

determination that plaintiff failed to prove by clear and

convincing evidence that LRG's corporate veil should be pierced

on account of fraud, injustice or otherwise circumventing the law,

we begin with the fundamental proposition that a corporation is a

separate entity from its shareholders. Lyon v. Barrett, 89 N.J.

294, 300 (1982). A primary reason for incorporation is the

insulation of shareholders from the liabilities of the corporate

enterprise. Adolf A. Berle, Jr., The Theory of Enterprise Entity,

47 Colum. L. Rev. 343 (1947); Note, Piercing the Corporate Veil:

The Alter Ego Doctrine Under Federal Common Law, 95 Harv. L. Rev.

853, 854 (1982); H. Henn, Law of Corporations § 146, at 250 (2d

ed. 1961). Even in the case of a parent corporation and its

wholly-owned subsidiary, limited liability normally will not be

abrogated. Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 34

(1950).

 Except in cases of fraud, injustice, or the like, courts will

not pierce a corporate veil. Lyon, supra, 89 N.J. at 300. The

purpose of the doctrine of piercing the corporate veil is to

prevent an independent corporation from being used to defeat the

ends of justice, Telis v. Telis, 132 N.J. Eq. 25, 26 (E. & A.

1942), to perpetrate fraud, to accomplish a crime, or otherwise

to evade the law, Trachman v. Trugman, 117 N.J. Eq. 167, 170 (Ch.

 15 A-1991-15T1
1934); State, Dept. of Environmental Protection v. Ventron Corp.,

94 N.J. 473, 500-01 (1983).

 Personal liability may be imposed upon a controlling

stockholder of a close corporation where the controlling

stockholder disregards the corporate form and utilizes the

corporation as a vehicle for committing equitable or legal fraud.

Walensky v. Jonathan Royce Intern., 264 N.J. Super. 276, 283,

(App. Div.), certif. denied, 134 N.J. 480 (1993); Marascio v.

Campanella, 298 N.J. Super. 491, 502 (App. Div. 1997). A party

seeking to pierce the corporate veil must establish: (1) that the

entity was "dominated" by the individual owner, and (2) "that

adherence to the fiction of separate corporate existence would

perpetrate a fraud or injustice, or otherwise circumvent the law."

Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super.

160, 199-200 (App. Div. 2006) (citing Ventron, supra, 94 N.J. at

500-01).

 The first prong of the analysis, "domination" requires a

showing that the closely held corporation or limited liability

company had "no separate existence" from its owner, and acted

merely as the owner's "conduit," "instrumentality," or "alter

ego." Id. at 200 (citing Ventron, supra, 94 N.J. at 501). Relevant

factors include undercapitalization, insolvency, the extent of the

owner's day-to-day involvement in the entity's affairs, the

 16 A-1991-15T1
absence or presence of separate records and accounts, and the

entities compliance or non-compliance with business formalities.

Canter v. Lakewood of Voorhees, 420 N.J. Super. 508, 519 (App.

Div. 2011) (quoting Verni, supra, 387 N.J. Super. at 200); 18 Am.

Jur. 2d Corporations § 54 (2004).

 To establish a fraud, an injustice, or other circumvention

of the law, the party seeking to pierce the corporate veil must

show the entity had "no independent business of its own," and the

owner deliberately undercapitalized the entity, thereby rendering

it judgment-proof. OTR Assocs. V. IBC Sec'ys, Inc., 353 N.J.

Super. 48, 52 (App. Div. 2002) (citing Ventron, supra, 94 N.J. at

501). Although Cerbone was LRG's sole member and manager and

retained exclusive control over its day-to-day activities, and was

solely responsible for its capitalization through his personal

assets and loans; and further, although he failed to hold meetings

or keep minutes, the plaintiff produced no evidence upon which the

fact finder could base a finding that Cerbone utilized LRG to

commit fraud, cause an injustice or otherwise circumvent the law.

 To the contrary, Judge Brennan found Cerbone, with the

exception of failing to conform with corporate formalities, abided

by the law, adequately capitalized LRG, did not personally profit

and had established LRG long before the events which provoked the

 17 A-1991-15T1
litigation, having operated LRG for the purpose of developing,

leasing and selling commercial real estate.

 Similarly, N.J.S.A. 42:2C-30 provides that:

 [t]he debts, obligations, or other liabilities
 of a limited liability company . . . are solely
 the debts, obligations, or other liabilities
 of the company[,]and [they] do not become the
 debts, obligations, or other liabilities of a
 member or manager solely by reason of the
 member acting as a member or manager acting
 as a manager.

 [N.J.S.A. 42:2C-30.]

 Nevertheless, the power to look beyond the corporate form is

well established. Stochastic Decisions, Inc. v. DiDomenico, 236

N.J. Super. 388, 393 (App. Div. 1989). Piercing the corporate

veil is a doctrine designed to address an otherwise enforceable

judgment that is rendered unenforceable because the defendant is

a corporate entity without sufficient assets to pay it. See Verni,

supra, 387 N.J. Super. at 199. It is an equitable remedy whereby

"the protections of corporate formation are lost" to eliminate the

"fundamental unfairness" that would otherwise result from a

"failure to disregard the corporate form." Ibid. (citations

omitted). The doctrine's purpose is to prevent a corporation or

limited liability company "from being used to defeat the ends of

justice, . . . to perpetrate fraud, to accomplish a crime, or

otherwise to evade the law[.]" Ventron, supra, 94 N.J. at 500.

 18 A-1991-15T1
 We are satisfied from our careful study of this matter that

there is substantial credible evidence in the record as a whole

which reasonably warrants the findings and conclusions of the

trial court. Therefore, we discern no sound reason or legal

justification for disturbing these findings and conclusions.

Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 455-56,

(1977); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484,

(1974); State v. Johnson, 42 N.J. 146, 161-62, (1964). See also

R. 2:11-3(e)(1)(A).

 Affirmed.

 19 A-1991-15T1