**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0422-18T2

REGINA LONGMUIR and
DOUGLAS A. LONGMUIR, JR.,

     Plaintiffs-Respondents,

v.

KICKIN' IT, INC., n/k/a
ROCKY MARCIANO WORLD
FOUNDATION, INC., t/a
BULLYING . . . WE'RE KICKIN'
IT,

     Defendants,

and

GINA MARIE RAIMONDO
and THOMAS RAIMONDO,

     Defendants-Appellants.

_____

Submitted January 27, 2020 – Decided April 21, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2868-14.

Garland & Mason LLC, attorneys for appellants (Gary L. Mason, on the brief).

Vincent E. Halleran, Jr., attorney for respondents.

PER CURIAM

Defendants Gina Marie Raimondo and her father, Thomas Raimondo, (collectively, defendants) appeal from a September 4, 2018 order to pay plaintiffs Regina Longmuir and Douglas A. Longmuir, Jr., $35,010 "in compliance with the [c]ourt's July 19, 2016 [o]rder," which was entered after a bench trial.[1]  This matter was previously before us when defendants appealed the 2016 judgment entered after the trial judge determined defendants fraudulently induced plaintiffs to loan them $35,010—paid by two checks payable to a corporation Gina formed,  Kickin' It, Inc. (KI)—and that there was sufficient evidence to pierce the corporate veil.  Longmuir v. Kickin' It, Inc., No. A-0980-16 (App. Div. Apr. 17, 2018).  Because the trial judge did not apply the correct standard of proof, we remanded the matter for that judge to reapply the facts he found under the clear and convincing standard of proof.  Id. at 7.  Defendants represent in their merits brief that the trial judge recused himself.  A

---

[1]  We use the parties' first names in the balance of this decision for clarity; we mean no disrespect or familiarity by that practice.

2

different judge (remand judge) conducted the remand hearing, applied the correct standard and re-entered the original judgment, which we now affirm.

The remand judge conducted a pretrial conference at which counsel for both parties "agreed on the record and in correspondence that they would prefer that [the remand judge] proceed with [his] decision on remand through a review of the . . . case history, rather than through a new trial." The remand judge reviewed the CourtSmart trial and post-trial hearings of June 22, June 23, June 29, July 19 and October 28, 2016, and the trial transcripts that counsel provided. In delivering his oral opinion, the remand judge said: "In deciding this case, [he] had the opportunity to read and hear the testimony of many witnesses, principally," both plaintiffs and both defendants.

The remand judge concluded the checks written by plaintiffs to KI were a loan, rejecting on credibility grounds defendants' position that they were an investment. The remand judge found, "[i]ncredibly, the recollection of . . . defendants throughout the testimony is seemingly clear only when it comes to the terms of the funds being loaned as an investment." Citing to specific portions of the June 22, 2016 trial transcript during which a recording of a conversation between Regina and Gina was played, which the remand judge found "insightful into [defendants'] demeanor," he continued: "The testimony of . . . defendants

simply did not make sense[.] [D]efendants, especially Gina . . . , were absolutely fixated on not admitting that this was a loan." The remand judge also observed that Douglas, during his trial testimony, "had an uncomfortable, seemingly, and almost visceral reaction" to Thomas's refusal to accept the funds plaintiffs wanted to tender to him personally.

The remand judge concluded Thomas "clearly was aware of the plan that he and his daughter had to deceive . . . plaintiffs of their loan." The judge found "Gina . . . was manipulating . . . plaintiff throughout their multiple meetings," at which she told plaintiffs about KI through which she planned to sell apparel and donate a portion of realized revenue to charities.

The remand judge rejected Thomas's testimony that he "clearly wasn't involved," and found his name appeared on a KI business card that he presented to plaintiffs, he had "extensive involvement in [KI] from the very first meetings" with plaintiffs, and purchased a recreational vehicle—what the judge termed "one of the most significant purchases by . . . defendants"—ostensibly used for travel to sell KI's goods, in Thomas's name, "and afterwards." Thomas's testimony that he purchased the vehicle in his name to obtain more favorable financing did "not resonate at all" with the remand judge.

4

In contrast to the picture defendants presented to plaintiffs, the remand judge found:

> [t]here never was any formality whatsoever in [KI]. There were no stock certificates, no financial reports whatsoever, no tax documents filed with the State of New Jersey or to the [Internal Revenue Service], no operating agreement, and no tax payments.
>
> There was an ambiguous Virginia corporation that ultimately went bankrupt . . . with no dissolution papers whatsoever.

The remand judge also noted Gina's testimony about "massive purchases made in cash in order to allegedly obtain cheaper clothing for her alleged business expenses; none of those purchases . . . was documented."

The remand judge concluded KI "was a facade for [defendants'] personal gain" justifying a piercing of the corporate veil due to defendants' use of the corporation as their alter ego. Applying the clear and convincing standard of proof, the remand judge declined to vacate the judgment for plaintiffs.

As we noted in our previous decision in this case:

> "Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence

as to offend the interests of justice."   [Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)]. To the extent that the trial court's decision constitutes a legal determination, we review it de novo.

[Longmuir, slip op. at 3 (first alteration in original).]

Defendants argue that "the [remand judge] did not identify any facts which would prove fraud, by clear and convincing evidence, for the purpose of piercing the corporate veil" and holding defendants "personally liable for KI's debt."  We disagree and affirm.

Although the remand judge did not heed our remand instruction to "separately consider whether plaintiffs have proved their cause of action on the sole remaining count [of fraud in the inducement], and then determine whether they met their burden to pierce the corporate veil," id. at 7, the record supports the conclusions he ultimately reached.

The elements of fraud in the inducement are:  a misrepresentation of material fact; knowledge or belief by the defendant of its falsity; intent that the other party rely on the misrepresentation; and reasonable reliance thereon by the other party.  Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).  Fraud in the inducement does not differ materially from common-law fraud, as it provides a cognizable basis for equitable relief in the event a false promise induced reliance.  See Lipsit v. Leonard, 64 N.J. 276, 283 (1974).

A-0422-18T2

The remand judge found both defendants complicit in misrepresenting the business in order "to deceive . . . plaintiffs of their loan," knowing that the business was a conduit for defendants' personal interests as evidenced by the lack of corporate formalities and the purchase of the recreational vehicle in Thomas's name. Plaintiffs loaned their money expecting, from defendant's representations, that they would get all their money back. Thus, all of the fraud-in-the-inducement elements were met.

Those same proofs, coupled with the evidence that defendants' control over the closely held corporation allowed Gina to travel the country in the recreational vehicle, sufficed to pierce KI's corporate veil. As we observed the last time this case was before us

> Courts will disregard corporate, legal singularity and hold individual principals liable if they use the corporation as their alter ego and abuse the corporate form in order to advance their personal interests. "[W]hen the corporate fiction is a mere simulacrum, an alter ego or business conduit of an individual, it may be disregarded in the interest of securing a just determination of an action." Coppa v. Taxation Div. Dir., 8 N.J. Tax 236, 249 (Tax 1986).
>
> [Longmuir, slip op. at 5 (alteration in original) (citations omitted).]

"Where individuals set up 'legitimate business structures to further their personal and business plans' and 'd[o] not use their [businesses] to commit fraud

or defeat the ends of justice,' the veil-piercing doctrine will not apply." Canter v. Lakewood of Voorhees, 420 N.J. Super. 508, 522 (App. Div. 2011) (first alteration in original) (quoting Shotmeyer v. N.J. Realty Title Ins. Co., 195 N.J. 72, 87 (2008)). The remand judge's finding set this case apart from that scenario. Personal liability may be imposed upon a controlling stockholder of a close corporation where the controlling stockholder disregards the corporate form and utilizes the corporation as a vehicle for committing equitable or legal fraud. Walensky v. Jonathan Royce Int'l, Inc., 264 N.J. Super. 276, 283 (App. Div. 1993).

Inasmuch as the consideration of that issue is one for the factfinder, "unless there is no evidence sufficient to justify disregard of the corporate form," Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 199 (App. Div. 2006), we decline to disturb the remand judge's decision. We are unconvinced that the remand judge's findings and legal conclusions "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Seidman, 205 N.J. at 169 (quoting In re Tr. Created by Agreement Dated Dec. 20, 1961, 194 N.J. 276, 284 (2008)).

A-0422-18T2

The remand judge's findings with regard to the lack of corporate structure and compliance with corporate formalities, including accountings, record-keeping and required filings, were indicative that KI had "no separate existence" from its owner, and acted merely as the owner's "conduit," "instrumentality," or "alter ego." Verni ex rel. Burstein, 387 N.J. Super. at 200. Gina's action in securing the loan and spending the borrowed funds, and Thomas's actions, abetting Gina's fraudulent scheme, supported the judge's conclusion that both were personally liable to plaintiffs.

Lastly, we reject defendant's complaint that the remand judge made credibility findings without observing the witnesses. Defendants agreed to have the remand judge decide the case on the already-established record. Moreover, although we have long decried making credibility determinations without hearing testimony, see, e.g., Conforti v. Guliadis, 128 N.J. 318, 322-23 (1992); see also Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988), the remand judge's credibility findings were based on his assessment of the oral testimony that he heard on CourtSmart from which he could discern the witnesses' demeanor such as Douglas's "uncomfortable, seemingly, and almost visceral reaction[.]" His credibility findings were also based on his perceptive analysis of defendants' testimony, findings which did not require witness observation.

For instance, he found it clear that "defendants are absolutely precise when it is convenient for their testimony, their language about a loan versus an investment being the most obvious example of this manipulation. Yet, their testimony falls on their inability to be anything but precise in the running of this alleged business. It was not."

We also note the remand judge's findings coincided with what we recognized in our prior decision in this matter as the trial judge's "extensive findings of fact[.]" Longmuir, slip op. at 3. In his oral opinion, the trial judge perpended defendants' testimony and concluded Thomas was "much more involved in the relationship with his daughter than what he would lead anybody, would like people to believe." And, he noted Gina continued to use the recreational vehicle purchased in Thomas's name even after the money had been "burned through . . . [a]nd the idea of [Gina] to sell clothing and give a percentage back to charitable organizations had long since gone."

The trial judge also noted the abundant evidence of lack of corporate formality. He found defendants "used [plaintiffs'] money for whatever expenses they had. And without . . . any regard for any accounting for it at all. There was absolutely no accounting done."

A-0422-18T2

The trial judge was clear when he found plaintiffs loaned the funds to defendants; it was not an investment. Although he did not apply the correct standard of proof, he found the evidence showed defendants "were involved in a plan, . . . not to use [the] money specifically for [KI]," but to use it for Gina's "personal gain."

The evidence supports the remand judge's factual findings and legal conclusions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0422-18T2